# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF INDIANA
# HAMMOND DIVISION

| | |
|---|---|
| FAM N.V.,<br><br>      Plaintiff,<br><br>v.<br><br>URSCHEL LABORATORIES, INC.,<br><br>      Defendant, | Case No. 2:19-cv-00439 |
| URSCHEL LABORATORIES, INC.,<br><br>      Counterclaim Plaintiff,<br><br>v.<br><br>FAM N.V. and FAM STUMABO U.S.A., INC.,<br><br> Counterclaim Defendants. | **JURY TRIAL DEMANDED** |

## DEFENDANT URSCHEL LABORATORIES, INC.'S
## AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND
## <u>COUNTERCLAIMS TO FAM'S SECOND AMENDED COMPLAINT</u>

Defendant Urschel Laboratories, Inc. ("Urschel" or "Defendant"), by and through its undersigned counsel, hereby files its Amended Answer in response to FAM's Second Amended Complaint for patent infringement, false advertising, and unfair competition filed by Plaintiff, FAM N.V. ("FAM" or "Plaintiff"). Any allegations not expressly admitted are denied.

## NATURE OF THE ACTION

1.    FAM brings this action for patent infringement to stop Urschel's infringement of FAM's United States Design Patent No. D730,703 ("the '703 Patent"), entitled "Knife Holder." A true and correct copy of the '703 Patent is attached hereto as <u>Exhibit A</u>.

**<u>ANSWER:</u>**    Defendant admits that the Complaint purports to set forth an action for patent infringement, but denies that there are any factual or legal bases for Plaintiff's claim. Defendant further admits that U.S. Design Patent No. D730,703 ("the '703 Patent") is entitled "Knife Holder," and that a document that purports to be a copy of the '703 Patent was attached as <u>Exhibit A</u> to the Complaint.

2.    FAM also brings this action for false advertising and unfair competition to stop Urschel from publishing advertisements that make objectively false and materially misleading statements regarding FAM and its products, which are likely to influence consumers' purchasing decisions and thus are likely to cause and/or have caused FAM to suffer commercial and competitive harm.

**<u>ANSWER:</u>**    Defendant admits that the Complaint purports to set forth an action for false advertising and unfair competition, but denies that there are any factual or legal bases for Plaintiff's claim.

## THE PARTIES

3.     Plaintiff FAM is a naamloze vennootschap (public company) organized and existing under the laws of Belgium, with its principal place of business located in Belgium.

**ANSWER:**     Defendant lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 3 of the Complaint and therefore denies them.

4.     Upon information and belief, Defendant Urschel is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 1200 Cutting Edge Dr., Chesterton, IN 46304.

**ANSWER:**     Defendant Urschel admits that it is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 1200 Cutting Edge Dr., Chesterton, IN 46304. To the extent there are any remaining allegations in paragraph 4 of the Complaint not addressed by the foregoing, Defendant Urschel denies them.

## JURISDICTION AND VENUE

5.     This is an action for design patent infringement arising under the Patent Act, 35 U.S.C. § 101 *et. seq.*, for false advertising and unfair competition under the Lanham Act, 15 U.S.C. 1101 *et seq.*

**ANSWER:**      Defendant admits that the Complaint purports to set forth an action arising under the Patent Act, 35 U.S.C. § 101 *et. seq.*, for false advertising and unfair competition under the Lanham Act, 15 U.S.C. 1101 *et seq.*, but denies any wrongdoing or liability.

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because FAM's patent infringement claim arises under federal law and relates to the Patent Act, and FAM's false advertising and unfair competition claims arise under federal law and relate to the Lanham Act.

3

**ANSWER:**    Defendant admits that this Court has jurisdiction over the subject matter of the suit pursuant to 28 U.S.C. §§ 1331 and 1338(a) for the limited purposes of this civil action only, but denies any wrongdoing or liability.

7.    This Court further has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity between FAM and Urschel and the amount in controversy exceeds $75,000.

**ANSWER:**    Urschel admits there is complete diversity between FAM and Urschel. Except as expressly admitted, Urschel denies the remaining allegations contained in paragraph 7 of the Complaint.

8.    This Court has personal jurisdiction over Urschel because Urschel has its principal place of business in Chesterton, Indiana.  Upon information and belief, Urschel also, directly or through intermediaries, manufactures infringing products in Chesterton, Indiana.

**ANSWER:**    Urschel admits that this Court has personal jurisdiction over it, for the limited purposes of this civil action only, because Urschel has its principal place of business in Chesterton, Indiana. Urschel admits that it manufactures products in Chesterton, Indiana. Except as expressly admitted, Urschel denies the remaining allegations contained in paragraph 8 of the Complaint.

9.    Venue is proper in this District pursuant to 28 U.S.C. §§ 1391 (b) and (c), and § 1400.

**ANSWER:**    Urschel admits that venue in the United States District Court for the Northern District of Indiana is proper.

4

## FACTUAL BACKGROUND

10.     FAM is one of the world's leading designer, developer and manufacturer of cutting solutions for the food industry.

**ANSWER:**     Urschel denies the allegations in paragraph 10 of the Complaint.

11.     FAM has distinguished itself from its competitors through its innovative designs, and has numerous patents covering these designs.

**ANSWER:**     Urschel denies the allegations in paragraph 11 of the Complaint.

12.     On May 7, 2014, U.S. Patent Application No. 29/490,213 was filed with the United States Patent and Trademark Office ("USPTO").

**ANSWER:**     Urschel admits that on its face U.S. Patent Application No. 29/490,213 appears to have been filed on May 7, 2014 with the United States Patent and Trademark Office ("USPTO").

13.     After a full and fair examination of U.S. Patent Application No. 29/490,213, the USPTO duly and legally issued '703 Patent on June 2, 2015 which claims an "ornamental design for a knife holder."  The '703 Patent claims a non-functional ornamental design.

**ANSWER:**     Defendant admits that on its face, the '703 Patent issued on June 2, 2015, claims "an ornamental design for a knife holder," and is based on U.S. Patent Application 29/490,213. To the extent there are any remaining allegations in paragraph 13 of the Complaint not addressed by the foregoing, Urschel denies them.

14.     The '703 Patent has been assigned to FAM, and FAM owns all right, title, and interest in and to the '703 Patent and has the right to sue and recover for past, present, and future infringement.

**ANSWER:**    Urschel admits that on its face the '703 Patent has been assigned to FAM. Urschel lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained in paragraph 14 of the Complaint and therefore denies these allegations.

15.    Urschel competes with FAM in the market for cutting and slicing tools used in the food industry.  Urschel has published advertising and promotional materials touting the purported advantages of its products over FAM's products, specifically including a publication titled "How We Stack Up" that Urschel published in at least March 2019 and April 2019 (the "Urschel Advertisement"), which purports to compare a particular Urschel slicing tool having fourteen cutting stations (the "SL-14 Slicing Head") to a FAM slicing tool that has sixteen cutting stations (the "FAM 16 Slicing Head").  A true and correct copy of the April 2019 version of the Urschel Advertisement is attached hereto as Exhibit B.

**ANSWER:**    Urschel admits on its face that the Urschel Advertisement attached as Exhibit B is entitled "How We Stack Up" in which comparisons are made between an Urschel SL-14 Slicing Head against a conventional 8-station head, among others. Except as expressly admitted, Urschel denies the remaining allegations contained in paragraph 15 of the Complaint.

**COUNT I**

**Patent Infringement, U.S. Patent No. D730,703**

16.    FAM incorporates and restates paragraphs 1 through 15 as if fully set forth herein.

**ANSWER:**    With respect to paragraph 16 of the Complaint, Urschel incorporates by reference its responses to the allegations contained in paragraphs 1 through 15 of the Complaint as set forth above.

17.    The Infringing Products are knife holders that infringe the '703 Patent.

**ANSWER:**    Urschel denies the allegations in paragraph 17 of the Complaint.

18.     For example, Infringing Product, marked as "25883 Urschel® USA", infringes the '703 Patent inasmuch as it has an overall visual appearance that, to an ordinary observer conversant in the prior art, is substantially the same as the overall visual appearance of the design claimed in the '703 Patent.

**ANSWER:**   Urschel admits that on its face the knife holder on the left is marked as "25883 Urschel® USA" and that, on the right, '703 Patent Figure 1 is shown. Except as expressly admitted, Urschel denies the remaining allegations contained in paragraph 18 of the Complaint.

19.     Upon information and belief, Urschel has infringed and continues to infringe the ornamental design for a knife holder claimed in the '703 Patent within the meaning of 35 U.S.C. § 271(a) through activities including, without limitation, manufacturing, offering for sale, and selling the Infringing Knifes in the United States.

**ANSWER:**   Urschel denies the allegations in paragraph 19 of the Complaint.

20.     Urschel's actions are without authority and/or license from FAM.

**ANSWER:**   Urschel admits no agreement exists between FAM and Urschel relating to the '703 Patent. Except as expressly admitted, Urschel denies the remaining allegations in paragraph 20 of the Complaint.

21.     Upon information and belief, Urschel will continue to infringe FAM's rights in the '703 Patent unless restrained by this Court.

**ANSWER:**   Urschel denies the allegations in paragraph 21 of the Complaint.

22.     FAM has suffered and continues to suffer irreparable injury, for which it has no adequate remedy at law.

**ANSWER:**   Urschel denies the allegations in paragraph 22 of the Complaint.

23.     As a result of Urschel's infringement of the '703 Patent, FAM has suffered damages in an amount to be determined at trial, which includes disgorgement of Urschel's total profits, lost profits, but in no event less than a reasonable royalty for the use made of the invention by Urschel, together with interest and costs as fixed by the Court.

**ANSWER:**     Urschel denies the allegations in paragraph 23 of the Complaint.

24.     FAM has complied with 35 U.S.C. § 287 to the extent required by law.

**ANSWER:**     Urschel lacks knowledge or information sufficient to form a belief as to the truth of the allegation contained in paragraph 24 of the Complaint and therefore denies it.

25.     Urschel's infringement has been willful, deliberate, and objectively reckless.

**ANSWER:**     Urschel denies the allegations in paragraph 25 of the Complaint.

26.     Urschel's infringement of the '703 Patent has caused irreparable harm to FAM, which has no adequate remedy at law, and will continue to injure FAM unless and until this Court enters an injunction prohibiting further infringement and, specifically, enjoining further importation, manufacture, use, offer for sale, and/or sale of the Infringing Products and any other products within the scope of the design claimed in the '703 Patent.

**ANSWER:**     Urschel denies the allegations in paragraph 26 of the Complaint.

**COUNT II**

**Federal False Advertising and Unfair Competition (15 U.S.C. § 1125(a))**

27.     FAM incorporates and restates paragraphs 1 through 26 as if fully set forth herein.

**ANSWER:**     With respect to paragraph 27 of the Complaint, Urschel incorporates by reference its responses to the allegations contained in paragraphs 1 through 26 of the Complaint as set forth above.

8

28.     The Urschel Advertisement is a statement made by Urschel in commerce, in connection with the commercial advertising or promotion of its products in the course of its business.

**ANSWER:**     Urschel admits that the Urschel Advertisement attached as Exhibit B is a statement made by Urschel in commerce, in connection with the commercial advertising or promotion of its products in the course of its business. Except as expressly admitted, Urschel denies the remaining allegations contained in paragraph 28 of the Complaint.

29.     In the Urschel Advertisement, Urschel purports to compare its SL-14 Slicing Head to a 16-cutting station slicing head sold by "a competitor."

**ANSWER:**     Urschel admits that on its face the Urschel Advertisement attached as Exhibit B purports to compare its SL-14 Slicing Head to a 16-cutting station slicing head sold by "a competitor." Except as expressly admitted, Urschel denies the remaining allegations contained in paragraph 29 of the Complaint.

30.     FAM is the only Urschel competitor that sells 16-cutting station slicing heads. Consumers of commercial food slicing tools would therefore understand Urschel's reference to "a competitor" to mean FAM.

**ANSWER:**     Urschel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 30 of the Complaint and therefore denies them.

31.     The Urschel Advertisement makes at least three false or misleading statements in comparing its SL-14 Slicing Head to the FAM 16 Slicing Head.

**ANSWER:**     Urschel denies the allegations in paragraph 31 of the Complaint.

32.     First, Urschel states that "[a] competitor claims their knife holders can be repaired by peening and filing, so can Urschel knife holders."  It is true that the knife holders in the FAM

16 Slicing Head can be repaired; indeed, FAM's product manuals expressly describe how to do so. Urschel's statement that the knife holders in its own SL-14 Slicing Head can be repaired, however, is false and/or materially misleading. Upon information and belief, Urschel's knife holders are unsuitable for repair. Indeed, Urschel product manuals expressly caution against attempting their repair.

**ANSWER:** Urschel admits that on its face the Urschel Advertisement attached as Exhibit B states that "[a] competitor claims their knife holders can be repaired by peening and filing, so can Urschel knife holders." Except as expressly admitted, Urschel denies the remaining allegations contained in paragraph 32 of the Complaint.

33. Second, Urschel states that, because the distance between cutting stations in the FAM 16 Slicing Head is shorter than the distance between cutting stations in the SL-14 Slicing Head, "[t]his shorter distance allows for average size potatoes to be simultaneously engaged with two knives, thereby generating greater scrap." This statement is also false and/or materially misleading. In fact, according to FAM's internal testing data, the FAM 16 Slicing Head generates an equal or lesser amount of scrap compared to Urschel's SL-14 Slicing Head (and generates far less scrap than Urschel's earlier slicing head designs).

**ANSWER:** Urschel admits that on its face the Urschel Advertisement attached as Exhibit B states that "[t]his shorter distance allows for average size potatoes to be simultaneously engaged with two knives, thereby generating greater scrap." Except as expressly admitted, Urschel denies the remaining allegations contained in paragraph 33 of the Complaint.

34. Third, Urschel states, in a paragraph titled "Cost Savings," that "[t]he price of the SL-14 flat knife holders is approximately 1/6th less than competitive holders. This adds up with the inevitable replacement due to rocks and sand in processing." (Emphasis in original.) This

10

statement, too, is false and/or materially misleading.  The configurations of Urschel's SL-14 Slicing Head and the FAM 16 Slicing Head are materially different.  In particular, the FAM 16 Slicing Head has a design (patent pending) pursuant to which damage caused by rocks and sand is diverted from the knife holders to less expensive components.  The knife holders in a FAM 16 Slicing Head therefore do not need to be replaced as frequently as those in Urschel's SL-14 Slicing Head. Urschel's statement that customers will achieve "cost savings" due to the comparative cost of replacing knife holders is therefore false and/or materially misleading.

**ANSWER:**    Urschel admits that on its face the paragraph in the Urschel Advertisement attached as Exhibit B titled "Cost Savings" states that "[t]he price of the SL-14 flat knife holders is approximately 1/6th less than competitive holders. This adds up with the inevitable replacement due to rocks and sand in processing." Except as expressly admitted, Urschel denies the remaining allegations contained in paragraph 34 of the Complaint.

35.    The foregoing three statements, which falsely represent and/or misleadingly suggest to consumers that Urschel's knife holders can be repaired, that FAM's slicing head generates more food scrap, and that consumers will realize cost savings with Urschel's SL-14 Slicing Head because the knife holders in that slicing head are less expensive than the knife holders in the FAM 16 Slicing Head, are material in that they are likely to influence consumer purchasing decisions.

**ANSWER:**    Urschel denies the allegations contained in paragraph 35 of the Complaint.

36.    Urschel made the foregoing statements willfully and in bad faith, knowing them to be false and/or misleading and/or in reckless disregard of their truth or falsity.

**ANSWER:**    Urschel denies the allegations contained in paragraph 36 of the Complaint.

11

37.     Urschel's false and/or misleading statements have caused harm to FAM, and are likely to continue to cause harm to FAM unless enjoined.

**ANSWER:**     Urschel denies the allegations contained in paragraph 37 of the Complaint.

### FAM'S PRAYER FOR RELIEF

Urschel denies that Plaintiff is entitled to any relief demanded in its Prayer for Relief in the Complaint, or any other relief whatsoever.

### JURY DEMAND

Urschel admits that FAM demands a jury trial.

### AFFIRMATIVE DEFENSES

Without admitting any of the allegations of the Complaint not otherwise expressly admitted, Defendant asserts the following affirmative defenses to Plaintiff's Complaint. Assertion of a defense is not a concession that Defendant has the burden of proving the matter asserted.

### FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM

38.     The Complaint fails to state a claim upon which relief can be granted.

### SECOND AFFIRMATIVE DEFENSE – NON-INFRINGEMENT

39.     Urschel does not make, use, sell, offer for sale, or import into the United States, and has not made, used, sold, offered for sale, or imported into the United States products or methods that infringe any valid claim of the '703 Patent, either directly, indirectly, contributorily, or otherwise, and has not induced others to infringe those patents.

### THIRD AFFIRMATIVE DEFENSE – INVALIDITY

40.     The '703 Patent and its claim thereof is invalid and/or unenforceable for failure to comply with one or more requirements of the United States Code and the rules, regulations, and

laws pertaining thereto, including, without limitation, the requirements of 35 U.S.C. §§ 101, 102, 103, 112, 115, and/or 171 for one or more of the following reasons:

41.    Urschel contends that the asserted claim of the '703 Patent is invalid as being anticipated or obvious in light of numerous prior art references, including Urschel's knife holders which it has sold for decades and other products or publications describing and illustrating knife holders that were publicly available before the priority date of the asserted patent.

42.    Urschel contends that the asserted claim of the '703 Patent is invalid as lacking ornamentality. For example, U.S. Patent No. 10,632,640 ("the '640 Patent"), filed by FAM, having a provisional filing date of November 21, 2013 and an issue date of April 28, 2020, depicts a substantially similar knife holder in Figures 2 and 3 like the knife holder in the '703 Patent, and explains the functionality of the knife holder's primary features in col. 9, lines 14–col. 10, lines 1–2. A true and correct copy of the '640 Patent is attached as <u>Exhibit 1</u>. The '640 Patent discloses the knife holder (all emphases added):

    a.   having a "corrugated shape **<u>arranged for supporting</u>** a corrugated shaped knife blade";

    b.   being "provided with bores 106 **<u>arranged for receiving</u>** the fixing elements 103 of the fastening mechanism **<u>for securing</u>** the knife blade between the clamp 102 and the holder 100";

    c.   providing "a plurality of stopping elements 107 . . . on the holder 100 **<u>at specific locations</u>** . . . **<u>used to engage</u>** a rear edge 108 of the knife blade . . . [to] **<u>function as a backstop preventing the movement</u>** of the knife blade 101 during cutting of food products in at least one direction"; and

13

    d.   with "a back surface 111 having a corrugated shape, which may be **arranged to match the corrugated shape** of the knife blade 101 . . . the grooves of the corrugated shape may **reduce friction between the product rotating** inside the cutting apparatus and the back surface of the holder."

43.     Urschel contends that the asserted claim of the '703 Patent is invalid as lacking ornamentality as there is no period in the commercial life of the '703 Patent when its ornamentality may be a matter of concern, as disclosed in col. 1, lines 46–62 and col. 3, lines 47–67, and as depicted in Figure 14 of the '640 Patent, for example, illustrating the inside of a cutting head 300 where 301 represents knife assemblies which would include a knife holder.

**FOURTH AFFIRMATIVE DEFENSE – LIMITATION OF DAMAGES**

44.     Upon information and belief, FAM's claim for damages is limited, including without limitation, by 35 U.S.C. §§ 286 and 287, for failing to comply with the marking or notice provision.

**FIFTH AFFIRMATIVE DEFENSE – GOOD FAITH**

45.     Defendants have engaged in all relevant activities in good faith, thereby precluding FAM, even if it prevails, from recovering its reasonable attorneys' fees and/or costs under 35 U.S.C. § 285 and 15 U.S.C. § 1117.

**SIXTH AFFIRMATIVE DEFENSE – NO EXCEPTIONAL CASE**

46.     Plaintiffs' request for relief is barred because it cannot prove that this is an exceptional case under 35 U.S.C. § 285 or 15 U.S.C. § 1117(a).

**SEVENTH AFFIRMATIVE DEFENSE – COSTS BARRED IN ACTION FOR INFRINGEMENT OF A PATENT CONTAINING AN INVALID CLAIM**

47.     FAM's claim for recovery of costs is barred for failure to comply with the requirements of 35 U.S.C. § 288.

**EIGHTH AFFIRMATIVE DEFENSE – UNENFORCEABILITY DUE TO INEQUITABLE CONDUCT**

48.     Upon information and belief, the Plaintiff committed inequitable conduct before the U.S. Patent and Trademark Office ("USPTO") in connection with the '703 Patent because Brent Bucks ("Mr. Bucks"), employed at FAM and the sole named inventor on the '703 Patent, failed to disclose material prior art and material information regarding the utility and novelty of the claimed design, and/or misrepresented the nature of the invention, in violation of the duty of disclosure and with the specific intent to deceive the USPTO.

49.     The '703 Patent is unenforceable due to inequitable conduct.

**A.  Mr. Bucks Owed a Duty of Candor to the Patent Office During Prosecution of the '703 Patent**

50.     Sole inventor Mr. Bucks signed a Declaration in connection with the '703 Patent on or about June 11, 2014. A copy of the Declaration is attached hereto as Exhibit 2.

51.     In signing the Declaration, inventor Mr. Bucks declared that he is the original inventor of the subject matter claimed in the application.

| | |
|---|---|
| As the below named inventor, I hereby declare that: | |
| This declaration is directed to: | ☐  The attached application, or |
| | ☑  United States application or PCT international application number  29/490,213 |
| | filed on  May 7, 2014                          . |

The above-identified application was made or authorized to be made by me.

I believe that I am the original inventor or an original joint inventor of a claimed invention in the application.

I hereby acknowledge that any willful false statement made in this declaration is punishable under 18 U.S.C. 1001 by fine or imprisonment of not more than five (5) years, or both.

52.     Mr. Bucks owed a duty of disclosure, candor, and good faith to the USPTO during prosecution of the '703 Patent.

53.     As set forth below, upon information and belief, Mr. Bucks breached his duty of disclosure, candor, and good faith to the USPTO by failing to disclose material information with an intent to deceive the USPTO.

**B.  The Prosecution of the '703 Patent**

54.     During the prosecution of the '703 Patent, the individuals with a duty to disclose material information, including Mr. Bucks, did not disclose any prior art to the Examiner during the prosecution of the '703 Patent.

55.     Despite Mr. Bucks' over two decades-long engineering background in creating and obtaining utility patents covering food cutting devices and accessories, including knife holders, Mr. Bucks failed to disclose for example (a) U.S. Patent No. 3,139,129, duly and legally issued by the USPTO on June 30, 1964, assigned to Urschel that depicts and describes non-ornamental knife holders; (b) prior utility patents and patent applications of knife holders listing Mr. Bucks as the sole or co-inventor and Urschel as the assignee, for example U.S. Patent No. 7,178,440, duly and

16

legally issued by the USPTO on February 20, 2007, that depicts and describes non-ornamental knife holders; (c) prior commercial Urschel knife holders, such as 22080 Urschel® USA, that have been sold for decades; (d) or the '640 Patent that describes the non-ornamental nature of the knife holders.

56.     These references that were material to patentability, which disclosed that the knife holder's overall design was functional and not ornamental and did not meet the standard of novelty and/or non-obviousness, were known by at least Mr. Bucks who had a duty to disclose such information to the USPTO, but were not disclosed during the prosecution of the '703 Patent.

57.     Upon information and belief, but for the nondisclosure and/or misrepresentation, the USPTO would not have granted the '703 Patent as a reasonable examiner would have considered the material information as evidence that the knife holder's overall design was functional and not ornamental and did not meet the standard of novelty and/or non-obviousness.

**C. Non-Disclosure of Material Information Including Prior Utility Patents and Urschel Knife Holders**

58.     U.S. Patent No. 3,139,129 ("the '129 Patent"), titled "Method of Slicing a Food Product," has a filing date of June 29, 1959 and issue date of June 30, 1964. A true and correct copy is attached as <u>Exhibit 3</u>.

59.     The '129 Patent is material as Figures 24 and 25 depict a knife holder 94 "for a corrugated knife 95," having "curvature substantially corresponding to the curvature of the inner side of each support to substantially constitute a continuation thereof," and "provided with corrugations . . . which receive and mate with transverse corrugations 101 formed in each of the knives 95," as disclosed in col. 9, lines 73–74, col. 10, lines 4–6, and col. 10, lines 9–12, respectively.

60.     The '129 Patent is material because it describes each knife holder 94 as being "provided with the threaded apertures 97" which allow "screws 96 [to] extend through the support and engage [the] threaded apertures 97 provided in the ends of the holder," as evidenced in Figures 18, 20 and 24 and as disclosed in col. 10, lines 15–16, and col. 9, line 74 to col. 10, lines 1–2, respectively.

61.     Moreover, as evidenced by Figure 18 of the '129 Patent, the knife holder 94 is not visible in its normal and intended use and there is no period in the commercial life when its ornamentality may be a matter of concern.

62.     Due to his long tenure with the company and his own patenting activity as an employee of Urschel, Mr. Bucks had knowledge of Urschel patents.

63.     Evidence of Mr. Bucks' knowledge can be found in U.S. Patent No. 6,148,702 ("the '702 Patent"), titled "Method and Apparatus for Uniformly Slicing Food Products," which has a filing date of April 19, 1999 and issue date of November 21, 2000. A true and correct copy of the '702 Patent is attached as Exhibit 4.

64.     The '702 Patent names Mr. Bucks as the sole inventor and Urschel as the assignee.

65.     The '702 Patent lists the '129 Patent as one of the "References Cited" during the prosecution of the '702 Patent.

66.     Despite such knowledge, Mr. Bucks failed to disclose the '129 Patent to the USPTO during the prosecution of the '703 Patent with the intent to deceive the USPTO.

67.     Upon information and belief, the USPTO would not have granted the '703 Patent but for this omission as a reasonable examiner would have considered the '129 Patent as material evidence that the knife holder's overall design was functional and not ornamental and did not meet the standard of novelty and/or non-obviousness.

68.     U.S. Patent No. 7,178,440 ("the '440 Patent") titled "Knife and Cutting Wheel for a Food Product Slicing Apparatus," has a filing date of January 12, 2005 and issue date of February 20, 2007. A true and correct copy is attached as <u>Exhibit 5</u>.

69.     The '440 Patent names Mr. Bucks as the sole inventor and Urschel as the assignee.

70.     The '440 Patent is material as it discloses a knife holder 98, shown in Figures 10 and 11 of the '440 Patent, that is mounted on a cutting wheel 12, "configured to support cutting blade 100 having a cutting edge with a profile 102 comprising a plurality of 'V's' along its length," and has a back surface 110 having "a profile 112 that accommodates the profile 102 of the cutting blade 100," as disclosed in col. 5, lines 60–62 and col. 6, lines 1–2.

71.     Mr. Bucks had knowledge of the '440 Patent and its materiality during prosecution of the '703 Patent as Mr. Bucks was the sole-named inventor of the '440 Patent.

72.     Despite such knowledge, Mr. Bucks failed to disclose the '440 Patent to the USPTO during the prosecution of the '703 Patent with the intent to deceive the USPTO.

73.     Upon information and belief, the USPTO would not have granted the '703 Patent but for this omission as a reasonable examiner would have considered the '440 Patent as material evidence that the knife holder's overall design was functional and not ornamental and did not meet the standard of novelty and/or non-obviousness.

74.     Since the 1980's, Urschel has sold numerous commercial knife holders, including product number 22080 Urschel® USA. Like the 25883 Urschel® USA knife holder, the 22080 Urschel® USA knife holder has the same amplitude of grooves for producing .125" V cuts in food such as potatoes.

75.     The only differences between model knife holder 25883 Urschel® USA and 22080 Urschel® USA relate to the necessary changes stemming from its method of manufacture and

required functionality, all of which Mr. Bucks became aware of during his relationship with Urschel.

76.     The 22080 Urschel® USA is material because whether standing alone with the knowledge of an ordinary designer or when considered together with other knife holder designs, it would render the claimed design obvious, and because it confirms the overall claimed design is functional, and not ornamental.

77.     Mr. Bucks had knowledge about the 22080 Urschel® USA knife holder and its materiality as it was manufactured and sold during the time that Mr. Bucks was employed at Urschel.

78.     Mr. Bucks failed to disclose the 22080 Urschel® USA knife holder to the USPTO during the prosecution of the '703 Patent with the intent to deceive the USPTO.

79.     Upon information and belief, the USPTO would not have granted the '703 Patent but for this omission as a reasonable examiner would have considered the 22080 Urschel® USA knife holder as material evidence that the knife holder's overall design was functional and not ornamental and did not meet the standard of novelty and/or non-obviousness.

80.      The '640 Patent discloses information material to the functionality of the knife holder and explains the functionality of the knife holder's primary features in col. 9, lines 14–col. 10, lines 1-2.

81.     As Mr. Bucks is named the sole inventor of the '640 Patent, he had knowledge regarding the functionality of the knife holder and its non-ornamental features as described in the '640 Patent.

82.     Mr. Bucks failed to disclose the knife holder's functionality as described in the '640 Patent to the USPTO during the prosecution of the '703 Patent with the intent to deceive the USPTO.

83.     Upon information and belief, the USPTO would not have granted the '703 Patent but for this omission as a reasonable examiner would have considered the functionality as described in the '640 Patent as material evidence that the knife holder's overall design was functional and not ornamental.

**NINTH AFFIRMATIVE DEFENSE – UNENFORCEABILITY DUE TO EQUITABLE DEFENSES**

84.     Defendant repeats and realleges the allegations in paragraphs 48–83 above as if fully set forth at length herein.

85.     Urschel is a global leader in food cutting technology and has sold food cutting products since William E. Urschel began the business in 1908.

86.     Mr. Bucks was employed at Urschel approximately from July 1987 through April 2006.

87.     During his tenure at Urschel, Mr. Bucks was the inventor of several U.S. patents relating to developments in food processing equipment, including those relating to knife holders.

88.     Mr. Bucks worked as a design engineer for much of his employment at Urschel, and his responsibilities included researching and developing new commercial machinery and redesign of existing equipment; developing manufacturing processes required for new products; designing and constructing machine tools and fixtures; and working directly with customers, engineers, and production personnel from a wide variety of food processing and manufacturing disciplines.

89.     As part of the scope of his employment at Urschel, Mr. Bucks was aware of Urschel's utility patents and prior knife holders; he was knowledgeable of Urschel's manufacturing processes; and he was aware of Urschel's considerations in using different manufacturing processes in making knife holders and other associated products, which ultimately led to Urschel's knife holder, 25883 Urschel® USA.

90.     For example, Mr. Bucks was a co-inventor on U.S. Patent No. 8,813,621, assigned to Urschel, that was filed February 21, 2006 and issued on August 26, 2014, almost eight years after Mr. Bucks had resigned as a design engineer at Urschel and after the application for the '703 Patent had been filed. A true and correct copy is attached as Exhibit 6.

91.     Since the 1980's and simultaneously during the time frame that Mr. Bucks was employed at Urschel, Urschel also sold a knife holder under product number 22080 Urschel® USA.

92.     Like the 25883 Urschel® USA knife holder, the 22080 Urschel® USA knife holder has the same amplitude of grooves for producing .125" V cuts in food such as potatoes.

93.     The differences between model knife holders 25883 Urschel® USA and 22080 Urschel® USA relate to the necessary changes stemming from its method of manufacture and required functionality, all of which Mr. Bucks was aware of before terminating his relationship with Urschel.

94.     Upon information and belief, due to his former role and responsibilities at Urschel for over nineteen years, Mr. Bucks took his expertise of Urschel's novel food cutting technology with him to FAM's United States subsidiary, FAM Stumabo U.S.A., Incorporated, as its Vice President of Business & Product Development.

95.     Upon information and belief, neither FAM nor FAM Stumabo U.S.A., Inc. manufacture, promote, or sell a slicing head in which the knife holder claimed in the '703 Patent could operate.

96.     Upon information and belief, the '703 Patent is intended to fit and be used on Urschel's Model CC cutting heads, not FAM's cutting heads, and Mr. Bucks' intimate knowledge of Urschel's design and manufacturing processes, obtained during his employment at Urschel, enabled Mr. Bucks and FAM to design a knife holder for such global use on Urschel's Model CC cutting heads.

97.     Upon information and belief, to the extent that Mr. Bucks conceived of the design claimed in the '703 Patent, he did so while at Urschel and/or based his design of the '703 Patent on technological know-how, information, and utility patents that he obtained during his employment at Urschel.

98.     Because the claimed design is based on ideas, technological know-how, and information that Mr. Bucks received during his employment at Urschel, Urschel, not FAM, should have rights to the intellectual property resulting therefrom.

99.     Upon information and belief, Mr. Bucks submitted a false declaration to the USPTO with the specific intent of deceiving the USPTO into believing that the alleged invention of the '703 Patent was conceived independently of his employment at Urschel.

100.     Despite Mr. Bucks' over two decades-long engineering background in creating and obtaining utility patents covering food cutting devices and accessories, including knife holders, Mr. Bucks, to the benefit of FAM, failed to disclose this material information to the USPTO and deliberately withheld it from the USPTO during the prosecution of the '703 Patent.

101.    As a result of Mr. Bucks' deceitful conduct during the prosecution of the '703 Patent, the USPTO granted the '703 Patent, and FAM has wrongfully obtained patent protection for the '703 Patent that it is now trying to assert against Urschel and to seek monetary damages from Urschel.

102.    Upon information and belief, FAM worked with Mr. Bucks to obtain the design patent; (b) FAM is aware of Urschel's food cutting devices and accessories in this space, including Urschel's patents; (c) FAM is aware that the '703 Patent is a functional part of Urschel's cutting heads, not FAM's cutting heads, and therefore was developed based on Mr. Bucks' knowledge gained from working for Urschel; and (d) that knife holders are the domain of utility patents, not design patents.

103.    FAM filed the present lawsuit in bad faith with the knowledge that the '703 patent was invalid and unenforceable due to Mr. Bucks' inequitable conduct.

104.    Urschel contends that this infringement suit is solely motivated to directly harm Urschel's domestic and global reputation in the food cutting market.

105.    The conduct incorporated by reference and described above renders the '703 Patent unenforceable on one or more of the grounds of estoppel, fraud, waiver, implied license, and unclean hands because FAM has wrongly obtained patent protection as a result of Mr. Bucks' deceptive conduct during the prosecution of the '703 Patent and/or because Urschel should have rights to any such patent obtained directly as a result of his employment at Urschel.

## RESERVATION OF ADDITIONAL DEFENSES

106.    Defendant is presently without knowledge or information sufficient to form a belief as to whether Defendant may have additional affirmative defenses that are not stated in this

Answer. Pursuant to Federal Rule of Civil Procedure 15, Defendant reserves the right to assert any additional affirmative defenses.

## COUNTERCLAIMS

Defendant-Counterclaim Plaintiff Urschel Laboratories, Inc. ("Urschel" or "Counterclaim Plaintiff"), by and through its undersigned counsel, asserts the following counterclaims against Plaintiff-Counterclaim Defendant FAM N.V. ("FAM") and Counterclaim Defendant FAM Stumabo U.S.A., Incorporated ("FAM U.S.A.") (collectively "Counterclaim Defendants"):

### NATURE OF THE ACTION

1.      The following counterclaims arise under the Federal Declaratory Judgments Act, 28 U.S.C. §§ 2201-02, under the patent laws of the United States, 35 U.S.C. §§ 101, *et seq.* under Section 43 of the Lanham Act, 15 U.S.C. §§ 1116-1118, 1125, and under the laws of the state of Indiana.

2.      Founded over 100 years ago, Urschel is the global leader in food cutting technology and continues to lead the world in the manufacturing and selling of commercial cutting equipment to the food processing and allied industries abroad and in the United States.

3.      Urschel's primary focus has been and continues to be creating the best cuts for Urschel's customers world-wide from invention and design, through manufacturing each part and machine in Chesterton, Indiana that bears the Urschel name, and continuing through its service of Urschel parts and machines for decades after a part or idea is born.

4.      Counterclaim Defendants have taken advantage of Urschel's several decades of continued investments in developing and building its novel cutting methods with cutting-edge manufacturing practices.

5.      As a result of one or more of Counterclaim Defendants' unlawful acts, Urschel's reputation for cutting-edge technology has been and will be irreparably harmed and consumers are likely to be confused or misled by one or more of Counterclaim Defendants' unsupported allegations, unfair competition, false designation of products, and false advertising.

6.      An actual and justiciable controversy exists between Urschel and FAM concerning the infringement, validity, and enforceability of the '703 Patent. Urschel seeks to obtain a judgment declaring that Urschel does not and has not infringed the '703 Patent and that the '703 Patent is invalid, void, and unenforceable.

7.       Urschel also seeks to enjoin and restrain Counterclaim Defendants from causing further harm to consumers and to Urschel by its unlawful activities including false designation of origin, false advertising, and unfair competition and to recover damages from Counterclaim Defendants for the harm its actions have already caused.

**PARTIES**

8.      Counterclaim Plaintiff Urschel is a corporation organized and existing under the laws of Delaware, with a principal place of business located at 1200 Cutting Edge Dr., Chesterton, Indiana 46304.

9.      According to its pleading, FAM is a naamloze vennootschap (public company) organized and existing under the laws of Belgium, with its principal place of business located in Belgium.

10.      Upon information and belief, FAM Stumabo U.S.A., Incorporated ("FAM U.S.A.") is a corporation organized and existing under the laws of Florida, with a principal place of business located at 7810 25th Court East, Unit 105, Sarasota, Florida 34243.

26

11.     Upon information and belief, FAM U.S.A. operates as the U.S. subsidiary of FAM and is used as the public company's U.S.-based operation responsible for selling products with the goal of expanding the company's presence in North America.

12.     Upon information and belief, Mr. Bucks is currently employed by FAM U.S.A. as its Vice President of Business & Product Development and acts as the registered agent of FAM U.S.A., having an address of 5324 96th Street E., Lakewood Ranch, Florida 34211.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction of Urschel's Counterclaims under one or more of Section 39 of the Lanham Act, 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, and 2201. Additionally, or alternatively, this Court has supplemental jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1338 and 1367 because they form part of the same case or controversy as the claims asserted in FAM's Complaint.

14.     This Court has personal jurisdiction over Counterclaim Defendants because FAM has consented to the personal jurisdiction of this Court and Counterclaim Defendants have distributed, offered for sale, or sold infringing merchandise within this State, have engaged in acts or omissions within this State causing injury, have manufactured or distributed products used or consumed within this State in the ordinary course of trade, or have otherwise made contacts with this State sufficient to permit the exercise of personal jurisdiction.

15.     Venue is proper in this Judicial District under 28 U.S.C. §§ 1391 and 1400.

## COUNT I: DECLARATORY JUDGMENT – NON-INFRINGEMENT OF THE PATENT-IN-SUIT ASSERTED AGAINST COUNTERCLAIM PLAINTIFF

16.     Urschel repeats and realleges the allegations in paragraphs 1–15 above as if fully set forth at length herein.

17.    FAM has contended, and now contends, that it owns the '703 Patent and that the '703 Patent is valid and enforceable.

18.    FAM has asserted the '703 Patent against Counterclaim Plaintiff and asserts that Counterclaim Plaintiff infringes the '703 Patent. FAM further asserts that such alleged infringement by Counterclaim Plaintiff is willful.

19.    Urschel, on the other hand, contends that they have not infringed and are not directly or indirectly infringing any claim of the '703 Patent, literally or under the doctrine of equivalents. Further, Counterclaim Plaintiff contends that they have not willfully infringed any such patent, and that they are not liable for damages arising from the claimed infringement.

20.    Urschel seeks a judicial determination and declaration of the respective rights and duties of the parties based on Counterclaim Plaintiff's contentions as set forth above. Such a determination and declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the non-infringement of the claims of the '703 Patent.

**COUNT II: DECLARATORY JUDGMENT – INVALIDITY OF THE PATENT-IN-SUIT ASSERTED AGAINST COUNTERCLAIM PLAINTIFF**

21.    Urschel repeats and realleges the allegations in paragraphs 1–20 above as if fully set forth at length herein.

22.    Urschel contends that the '703 Patent assigned to FAM is invalid for failing to comply with the conditions and requirements for patentability as set forth in the United States Laws, Title 35 U.S.C. §§ 101, 102, 103, 112, 115 and/or 171, and the rules, regulations, and laws pertaining thereto, and as set forth specifically in the Affirmative Defenses of the Answer to which this Counterclaim is appended, all of which are incorporated herein by reference.

23. Urschel seeks a judicial determination and declaration of the respective rights and duties of the parties based on Counterclaim Plaintiff's contentions as set forth above. Such a determination and declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the invalidity of the claims of the '703 Patent.

## COUNT III: DECLARATORY JUDGMENT – UNENFORCEABILITY OF THE PATENT-IN-SUIT ASSERTED AGAINST COUNTERCLAIM PLAINTIFF

24. Urschel repeats and realleges the allegations in paragraphs 48-105 of the Answer and paragraphs 1–23 of the Counterclaims above as if fully set forth at length herein.

25. Urschel contends the '703 Patent is unenforceable under one or more of the equitable doctrines of equitable estoppel, judicial estoppel, waiver, unclean hands, and inequitable conduct.

26. In particular, upon information and belief, Mr. Bucks committed inequitable conduct before the U.S. Patent and Trademark Office (USPTO) in connection with the '703 Patent because Mr. Bucks, the sole named inventor on the '703 Patent, did one or more of the following during the prosecution of the '703 Patent, with the specific intent to deceive the USPTO of material prior art or information: (a) failed to disclose to the USPTO material prior art utility patents of knife holders, for example U.S. Patent No. 3,139,129, duly and legally issued by the USPTO on June 30, 1964, assigned to Urschel that depicts and describes non-ornamental knife holders; (b) failed to disclose to the USPTO material prior utility patents and patent applications of knife holders listing Mr. Bucks as sole or co-inventor and Urschel as assignee, for example U.S. Patent No. 7,178,440, duly and legally issued by the USPTO on February 20, 2007, that depicts and describes non-ornamental knife holders; (c) failed to disclose any prior art utility patents or non-patent literature, as required by the duty of disclosure and as evidenced by the prosecution history,

for example prior commercial Urschel knife holders, such as 22080 Urschel® USA, that have been sold for decades; (d) failed to disclose U.S. Patent No. 10,632,640 that describes the non-ornamental nature of the knife holders; and/or (e) submitted a false declaration to the USPTO with the specific intent of deceiving the USPTO into believing that the alleged invention of the '703 Patent was conceived independently of Mr. Bucks' employment at Urschel.

27.    Upon information and belief, but for the nondisclosure and/or misrepresentation, the USPTO would not have allowed the '703 Patent as a reasonable examiner would have considered the material information as evidence that the knife holder's overall design was functional and not ornamental, that it did not meet the standard of novelty and/or non-obviousness, and/or that Mr. Bucks was not the sole inventor of the subject matter claimed.

28.    As a result of Mr. Bucks' intent to deceive the USPTO, FAM has wrongfully obtained patent protection for the '703 Patent that it is now trying to assert against Urschel and to seek monetary damages from Urschel.

29.    The conduct incorporated by reference and described above renders the '703 Patent unenforceable on one or more of the grounds of estoppel, fraud, waiver, implied license, and unclean hands because FAM has obtained patent protection as a result of Mr. Bucks' deceptive conduct during the prosecution of the '703 Patent.

30.    Urschel seeks a judicial determination and declaration of the respective rights and duties of the parties based on Counterclaim Plaintiff's contentions as set forth above. Such a determination and declaration are necessary and appropriate at this time so that the parties may ascertain their respective rights and duties regarding the enforceability of the claims of the '703 Patent against Urschel.

## COUNT IV: UNJUST ENRICHMENT

31.     Urschel repeats and realleges the allegations in paragraphs 1–30 above as if fully set forth at length herein.

32.     Urschel has invested substantial funds into its research and development for innovative food cutting technology.

33.     Counterclaim Defendants have benefited from Urschel's rich history in manufacturing food technology, specifically knife holders, and from Mr. Bucks' former design and engineering experience at Urschel.

34.     Counterclaim Defendants have been unjustly enriched in obtaining the '703 Patent by relying on information that was provided to Mr. Bucks or conceived of by Mr. Bucks during his tenure as an employee at Urschel.

35.     Counterclaim Defendants were necessarily aware of and knowledgeable that Counterclaim Defendants would gain a benefit from Mr. Bucks' former engineering experience at Urschel, including information about how Urschel manufactures its knife holders and related accessories and how Urschel might design future knife holders, and instructed Mr. Bucks to pursue patents, for Counterclaim Defendants' benefit, using the know-how and insight retained by Mr. Bucks regarding Urschel's future food cutting technology.

36.     Indeed, the single most reasonable inference to be drawn from Counterclaim Defendants' failure to disclose this information during the prosecution of the '703 Patent, including the material prior art as alleged above, is an intent to deceive the USPTO into wrongfully granting patent protection to Counterclaim Defendants and Mr. Bucks as sole inventor of the '703 Patent.

31

37.     Because this food cutting technology, including the manufacturing practices used to develop the knife holder as claimed in the '703 Patent, was in fact developed by one or more employees at Urschel, Mr. Bucks and Counterclaim Defendants have wrongfully obtained patent protection that they are now trying to use against Urschel and to seek monetary damages from Urschel.

38.     Upon information and belief, FAM worked with Mr. Bucks to obtain the design patent; (b) FAM is aware of Urschel's food cutting devices and accessories in this space, including Urschel's patents; (c) FAM is aware that the '703 Patent is a functional part of Urschel's cutting heads, not FAM's cutting heads, and therefore, was developed based on Mr. Bucks' knowledge gained from working for Urschel; and (d) that knife holders are the domain of utility patents, not design patents.

39.     As a result of Counterclaim Defendants' misconduct, it is inequitable for Counterclaim Defendants to retain the benefit without paying to Urschel the full value unjustly earned by Counterclaim Defendants.

## COUNT V: VIOLATION OF § 43(a) OF THE LANHAM ACT – UNFAIR COMPETITION AND FALSE ADVERTISING

40.     Urschel repeats and realleges the allegations in paragraphs 1–39 above as if fully set forth at length herein.

41.     Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A), prohibits conduct that constitutes a false designation of origin, a false or misleading description of fact, and/or false misleading representation of fact which is likely to cause confusion.

42.     One or more of Counterclaim Defendants has violated Section 43(a) of the Lanham Act by falsely designating the origin of certain products in a way that is likely to cause consumer confusion.

43.     For example, Urschel manufactures and is the true source of origin of knife holders marked as 22676 Urschel® USA. These knife holders are manufactured in this District, in Urschel's headquarters in Chesterton, Indiana and sold throughout the United States and abroad.

44.     One or more of the Counterclaim Defendants have purchased knife holders marked as "22676 Urschel® USA" that have originated from Urschel's manufacturing plant in Chesterton, Indiana and falsely designated the origin of these knife holders, by: (a) obliterating Urschel's original trademark from the same products; (b) replacing Urschel's original trademark with Counterclaim Defendants' numbering system; (c) reselling them to customers, including offering them for sale to consumers throughout the U.S. and in this District, either directly or indirectly through entities under common control with Counterclaim Defendants, thereby engaging in unfair competition in violation of § 43(a) of the Lanham Act.

45.     On the bottom of the following picture is a knife holder that Urschel manufactured and offers for sale, marked with Urschel's registered trademark and product identification: "22676 Urschel® USA."

46.     One or more of the Counterclaim Defendants took the knife holder at the top of the following picture, removed Urschel's trademark and product identification ("22676 Urschel® USA"), and remarked it with one or more of the Counterclaim Defendants' numbering system "2542" so as to have subsequent purchasers believe that one or more of the Counterclaim Defendants are the originator of the product.



47.     Upon information and belief, Counterclaim Defendants do not themselves manufacture a knife holder having the same design as 22676 Urschel® USA.

48.     Counterclaim Defendants' websites (https://www.fam-stumabo.com/) or (https://www.fam.be/en/about), both link to the website of sister company Stumabo International's website (https://www.stumabo.com/), an entity under common control with both of the Counterclaim Defendants.

49.     FAM and Stumabo International ("Stumabo") are sister companies and under control by the Hifferman Group, a holding company. Upon information and belief, FAM and Stumabo also control FAM-Stumabo U.S.A.

50.     Through these links, customers, including customers in this District, can purchase the knife holders pictured above.

51.     A consumer can locate this knife holder on Stumabo's website either by searching for "Urschel," or "FAM," as the OEM. The description of the resulting knife holder is the same,

but it is identified as FAM part no. 2542 (OEM ref 410025) if a consumer searched for a FAM product, and it is properly identified as Urschel part no. 22676, if a consumer searched for an Urschel product.



52.     Because FAM is identified as the original equipment manufacturer "OEM," this demonstrates that one or more of the Counterclaim Defendants is wrongfully involved, either directly or indirectly through entities under common control with Counterclaim Defendants, in remarking and misrepresenting Urschel's knife holders as FAM's knife holders.

53.     Upon information and belief, Stumabo merely takes orders on FAM's behalf and FAM processes the order.

54.     Upon information and belief, a customer making a purchase from the Stumabo website will receive an invoice from FAM, the products will arrive in FAM packaging with FAM labels, and customers can make returns to FAM's corporate address listed on the invoice and packaging.

55.     Counterclaim Defendants cause, and have caused its falsely designated offending products, either directly or indirectly through entities under common control with Counterclaim Defendants, to enter interstate commerce, including in this District and the U.S., including through offering such offending knife holders on its websites being accessible through the internet by persons throughout the U.S. and in this District.

56.     Alternatively, to the extent that one or more of the Counterclaim Defendants contend that the remarking of the Urschel knife holders as FAM products is performed by Stumabo or some other entity, one or more of the Counterclaim Defendants had knowledge of the remarking and intentional false designation of origin as to the knife holders, and continued to sell or offer to sell the remarked products with the intent to deceive or confuse consumers as to the source or origin of the knife holders, and therefore one or more of the Counterclaim Defendant's activity constitutes a contributory violation of the Lanham Act.

57.     As a direct and proximate result of the wrongful conduct of Counterclaim Defendants, Urschel has been damaged because its customers and potential customers are deceived into believing that Urschel's reputable, innovative products, including knife holders, are in fact manufactured by Counterclaim Defendants and/or through entities under common control with Counterclaim Defendants.

58.     As a direct and proximate result of the wrongful conduct of Counterclaim Defendants, Urschel's reputation has been damaged because its customers and potential customers falsely believe Counterclaim Defendants are capable of manufacturing knife holders in comparable quantity and quality as Urschel manufactures in Chesterton, Indiana.

59.     As a direct and proximate result of the wrongful conduct of Counterclaim Defendants, Urschel has been involuntarily deprived of the advertising value of its name and goodwill that otherwise comes from the market's knowledge of the true source of the knife holders.

60.     Urschel has been further damaged by losing sales and market share in both the United States and abroad related to these knife holders and other associated products. Urschel will continue to be substantially injured unless Counterclaim Defendants' unlawful activity is enjoined.

61.     Counterclaim Defendants' actions demonstrate an intent to trade on the reputation and goodwill associated with Urschel's marks, which entitles Urschel to recover an amount equal to Counterclaim Defendants' profits, Urschel's damages, enhanced profits and damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

62.     Urschel is entitled to injunctive relief against marketing and sale of the offending products, confiscation and destruction of offending products, damages, and/or an accounting of profits and attorney's fees.

**COUNT VI: VIOLATION OF § 43(a) OF THE LANHAM ACT – FALSE ADVERTISING**

63.     Urschel repeats and realleges the allegations in paragraphs 1–62 above as if fully set forth at length herein.

64.     One or more of the Counterclaim Defendants' advertising and marketing materials contain false and/or misleading claims. Particularly, among others, these false and misleading statements concern Counterclaim Defendants being the first company in the industry to ever receive USDA Dairy Acceptance for its cutting head; the hygienic superiority of the same; efficacy of its SureShred 16C cutting head to reduce scrapping, starch loss, tapered slices; capacity of the FAM Tridis™ 240; and durability of its knives.

65.     Specifically, for example, FAM's main website page (https://www.fam.be/), which is linked from FAM U.S.A.'s website (https://www.fam-stumabo.com/), each website being independently accessible through the internet by persons in this District and the U.S., contains an article titled, "FAM Receives USDA Dairy Acceptance for its Centrifugal Cheese Shredder and Cutting Head." Among the article's false claims are the following (all emphases added):

   a.   "FAM, the **European market leader** specialized in cutting solutions for the food industry . . ."

37

b. "FAM is the **first company** in the industry to ever receive dairy acceptance for a centrifugal cutting head."



66.     Upon information and belief, one or more of the Counterclaim Defendants wrote or otherwise contributed to the advertisement shown above.

67.     The statements in paragraph 65 are false because:

a. FAM is not the "European market leader specialized in cutting solutions for the food industry," and thus, the statement is literally false.

b. FAM is not the "first company in the industry to ever receive dairy acceptance for its centrifugal cutting head" because at least Urschel received such acceptance before FAM did in August 2006 for its Model CCX-D cheese shredder and in March 2012 for its Model CC-DL & CCX-DL cheese shredder, and as such, the statement is literally false.

68.     Other false claims can be found on one or more of the Counterclaim Defendants' websites which are either linked to or directly on FAM's main website page. Among the websites' false claims are the following (all emphases added):

a. "FAM™ . . . is the **undisputed market leader** in Europe" (https://www.necst.solutions/ – linked to FAM's main website page https://www.fam.be/).

b. ". . . Brent Bucks, R&D Director at FAM, **market leader** in industrial cutting machines and supplier of a complete range for the cutting of potato chips" (https://www.fam.be/).

c. "FAM **world-wide market leader** in food cutting machines" (https://youtu.be/8Au_PiRLG8E?t=8 – start at 0:08).







69.     Upon information and belief, one or more of the Counterclaim Defendants wrote or otherwise contributed to the advertisements shown above in paragraph 68.

70.     These statements are false because FAM is not the undisputed market leader in Europe; FAM is not the market leader in industrial cutting machines; nor is FAM the world-wide leader in food cutting machines. These statements are literally false, misleading, factually inaccurate, and due to their specificity and objectivity, do not amount to mere puffery.

71.     These literally false and misleading advertisements identified above convey the message and are designed to provide consumers with the false belief that FAM is the global market leader affecting U.S. consumer decision-making as these same false and misleading advertisements are material to U.S. consumer purchasing decisions.

72.     Additional materials on FAM's website under its "News & Tradeshows" tab, include an article titled, "FAM's new centrifugal shredders are cut out for the job." Among the article's false claims are the following (all emphases added):

a.     The FAM Centris™ 400C Hytec has the "**highest level of hygiene** available on the market, as is proven by the USDA Dairy Division Acceptance."

40

b. The SureShred 16C is "the **first ever cutting head** to receive USDA Dairy Division Acceptance."



73. The statements in paragraph 72 are false because:

a. Stating that the FAM Centris™ 400C Hytec has the "**highest level of hygiene** available on the market," suggests that there is a tiered standard for grading hygiene in the food cutting industry and that the FAM Centris™ 400C Hytec has the highest grade of hygiene. There are not multiple tiers for grading hygiene such that this statement is literally false.

b. SureShred 16C is not "the **first ever cutting head** to receive USDA Dairy Division Acceptance" because at least Urschel received such acceptance before FAM did for its cutting head in August 2006 for its Model CCX-D cheese shredder and in March 2012 for its Model CC-DL & CCX-DL cheese shredder, and as such, the statement

41

is literally false. A true and correct copy of the Urschel Model CCX-D USDA Dairy Acceptance Certificate and of the Urschel Model CC-DL & CCX-DL USDA Dairy Acceptance Certificate is attached as Exhibit 7 and Exhibit 8.

74.     On and before at least March 6, 2020, another example of false claims could be found on FAM U.S.A.'s website (https://www.fam-stumabo.com/) that Counterclaim Defendants' Tridis™ 240 increased dicing capacity "compared to other available dicers in the industry . . . by 10% to 40%." The advertisement also stated that the Tridis™ is a consumer's "top choice" and that it "sets the bar in terms of capacity, cut quality, hygiene, simplicity and maintenance." These statements convey the message and are designed to provide consumers with the false belief that the FAM Tridis™ has been proven, *inter alia*, to have the highest capacity, cut quality, hygiene, and simplicity over all other choices on the market.

**French Fries**

For French fries processing, the new and innovative FAM Tridis 240P dicer is your top choice. It sets the bar in terms of capacity, cut quality, hygiene, simplicity and maintenance. Moreover, compared to other available dicers in the industry, the FAM Tridis 240 increases capacity by 10% to 40%.

75.     FAM U.S.A.'s website falsely claims that Counterclaim Defendants' Tridis™ 240 is the "highest capacity dicer on the market" and has increased capacity "compared to other available cutting machines . . . by 10% to 40%." These statements convey the message and are designed to provide consumers with the false belief that the FAM Tridis has been proven to have the highest capacity over all other choices on the market.

**FAM Tridis™ 240P**

The FAM Tridis™ 240P is the **highest capacity dicer** on the market, designed for the very demanding French fry industry. Perfecting the product flow has led to an excellent cut quality and yield, with less slivers and fines.
Optimal product transit, with high passage speed, and minimum path length leads to ultimate cut quality.

- Compared to other available cutting machines, the FAM Tridis™ 240P increases capacity by 10% to 40%.

- Maintenance time is drastically reduced by intelligent design and efficient auxiliary tools.

- Improved hygiene through maximum accessibility and sanitary design.

- Cutting tools can easily be replaced and adjusted thanks to a number of important Set & Forget™ features. Simplicity above all.

76.    On and before at least March 6, 2020, FAM U.S.A.'s website (https://www.fam-stumabo.com/) claimed that the SureSet 16 cutting head has saved customers money through: "Up to 50% less scrap from slicing, up to 30% less starch loss, [n]early no tapered slices, [n]o thick cap ends, and [r]educed labor costs." Those claims convey to consumers that, because its cutting head purportedly has 50% less scrap from slicing, up to 30% less starch loss, nearly no tapered slices, no thick cap ends, and reduced labor costs, it cuts better than any centrifugal cutting head available in the marketplace. These claims are literally false and misleading to consumers.

77.    Additionally, on and before at least March 6, 2020, FAM U.S.A.'s website also claimed the knives in the SureSet 16 cutting head have a "longer blade life . . . hav[ing] a lifetime up to 12-24 hours." Those claims convey to consumers that because its knives have a "longer blade life," the SureSet 16 cutting head is more user-friendly and cost-effective. These claims are literally false and misleading to consumers.

43



78.     One    or    more    of    Counterclaim    Defendants'    Centris™    website (https://centris.solutions/en#) claims that the SureSet 16 cutting head has saved customers money through: "Up to 50% less scrap from slicing, up to 30% less starch loss, [n]early no tapered slices, [n]o thick cap ends, and [r]educed labor costs." Those claims convey to consumers that, because its cutting head purportedly has 50% less scrap from slicing, up to 30% less starch loss, nearly no tapered slices, no thick cap ends, and reduced labor costs, it cuts better than any centrifugal cutting head available in the marketplace. These claims are literally false and misleading to consumers.

79.     Additionally, one or more of Counterclaim Defendants' Centris™ website also claims the knives in the SureSet 16 cutting head have a "longer blade life . . . hav[ing] a lifetime up to 12-24 hours." Those claims convey to consumers that because its knives have a "longer blade life," the SureSet 16 cutting head is more user-friendly and cost-effective. These claims are literally false and misleading to consumers.

80.     One or more of Counterclaim Defendants' Centris™ website is directed to United States and European consumers as it encourages consumers to "[c]all us for more information" through Counterclaim Defendants' contact information located on the Centris™ website.

81.     As articulated above, these false and misleading statements by Counterclaim Defendants constitute false advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), on the following bases:

a.     As establishment claims, these advertisements are literally false and misleading because Counterclaim Defendants either have no tests or their tests do not reliably establish the proposition for which they are cited—namely, that the FAM Centris™ product line has the "highest level of hygiene available on the market," including being more hygienic than Urschel's cutting heads; that the Tridis™ 240 increases dicing capacity "compared to other available dicers in the industry . . . by 10% to 40%" and is the top choice on the market in terms of a number of characteristics; and that SureSet 16 cutting head knives have a "longer blade life" that "have a lifetime up to 12-24 hours."

     b.   As implied claims that by having "50% less scrap from slicing, up to 30% less starch loss, nearly no tapered slices, no thick cap ends, and reduced labor costs" and "longer blade life," the SureSet 16 cuts better than any other centrifugal cutting head.

82.    Counterclaim Defendants cause, and have caused, their false and misleading advertising to enter interstate commerce, including by making false and misleading claims in national Internet advertising and point-of-purchase advertising that can be reached by consumers in this District.

83.    Counterclaim Defendants' false and misleading claims are material in that they are likely to influence consumers' purchasing decisions and because they are comparative superiority claims that relate to inherent qualities or characteristics of the product.

84.    As a direct and proximate result of the wrongful acts of Counterclaim Defendants alleged above, Urschel has suffered, and will continue to suffer irreparable harm, substantial damage to its business reputation, goodwill, and market share, as well as diversion of sales from itself to Counterclaim Defendants and loss of profits in an amount not yet ascertained. Counterclaim Defendants' false advertising will continue to harm Urschel, causing irreparable injury for which there is no adequate remedy at law, unless preliminarily and permanently enjoined by this Court pursuant to 15 U.S.C. § 1116.

85.    Counterclaim Defendants' false advertising has been and continues to be willful, knowing, calculated to deceive, and undertaken in bad faith. As a result, this Court should determine that this is an exceptional case and award Urschel its attorneys' fees and costs incurred in prosecuting this action and enhanced damages pursuant to 15 U.S.C. § 1117.

## COUNT VII: UNFAIR COMPETITION UNDER STATE COMMON LAW

86.     Urschel repeats and realleges the allegations in paragraphs 1–85 above as if fully set forth at length herein.

87.     Counterclaim Defendants' actions created confusion in the marketplace concerning the source of certain goods, including knife holders that are originally manufactured by Urschel and marked with the Urschel® USA identification and part number, by removing the Urschel® marks and replacing Urschel's identifying information with their own markings and labels.

88.     Counterclaim Defendants' actions have the natural and probable tendency and effect of deceiving the public into passing off the goods as its own, and as such constitute unfair competition in violation of the common law of states, including Florida and Indiana, in which they have marketed and sold their offending products.

89.     Counterclaim Defendants' actions have caused, and unless restrained, will continue to cause harm to consumers as well as significant and irreparable injury to Urschel, and the business and goodwill associated with Urschel, in an amount that cannot be presently ascertained. Urschel, therefore, is entitled to injunctive and monetary relief.

## RELIEF REQUESTED

**WHEREFORE, Urschel prays:**

1.     That the Court enter judgment against Counterclaim Defendants and in favor of Urschel, and dismiss FAM's Complaint with prejudice.

2.     That the Court enter judgment declaring the '703 Patent not infringed.

3.     That the Court enter judgment declaring the '703 Patent invalid.

4.     That the Court enter judgment declaring the '703 Patent unenforceable.

5.      That the Court enter judgment in favor of Urschel finding that Urschel is not liable for false advertising or other unfair competition.

6.      That the Court enjoin and restrain Counterclaim Defendants, its officers, agents, employees and all persons acting in privity or concert with them from harassing Urschel or anyone in privity with Urschel with infringement actions or with threats of infringement actions on the '703 Patent.

7.      That the Court enter judgment finding that Counterclaim Defendants' actions have violated the rights of Urschel under Section 43 of the Lanham Act, and under state common law regarding unfair competition.

8.      That the Court permanently enjoin and restrain Counterclaim Defendants, its subsidiaries and affiliated companies, and its officers, directors, agents, servants, employees, affiliates, and all other persons acting in concert, or participating with Counterclaim Defendants:

   a.      From falsely designating the origin of its offending products that is likely to confuse the public that Counterclaim Defendants manufacture products that are actually manufactured by Urschel;

   b.      From misrepresenting the nature, characteristics, or qualities of its goods or of its own business practices;

   c.      From otherwise competing unfairly with Urschel in any manner; and

   d.      From conspiring with, aiding, assisting or abetting any other person or business entity from engaging in or performing any of the activities referred to in subparagraphs (a)–(c) above.

48

9.     That the Court order Counterclaim Defendants to engage in corrective advertising to correct the misimpressions with which their earlier advertisements have left consumers.

10.    That the Court order Counterclaim Defendants to file with the Court and to serve on counsel for Urschel, within thirty (30) days after the entry and service on Counterclaim Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Counterclaim Defendants have complied with the foregoing injunction provisions.

11.    That the Court order an accounting and render judgment against Counterclaim Defendants for an amount equal to Counterclaim Defendants' profits received from their unauthorized use of Urschel's marks.

12.    That the Court enter judgment in favor of Urschel for all damages sustained on account of FAM's unfair competition and false designation of the origin of its products and for enhanced profits and damages pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117(a).

13.    That Urschel be awarded its attorneys' fees and costs incurred in this action pursuant to 15 U.S.C. § 1117(a) and prejudgment and post-judgment interest.

14.    That Urschel be awarded monetary damages pursuant to state law.

15.    For such other and further relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Urschel demands a trial by jury on all counts of the Complaint and the Answer and Counterclaims so triable.

Respectfully submitted,

Dated:  October 16, 2020

 _/s/ Megan Sunkel Woodworth_____
Megan Sunkel Woodworth
Urschel-FAM@venable.com
**VENABLE LLP**
600 Massachusetts Ave, NW
Washington, DC 20001
(202) 344-4000 (Telephone)
(202) 244-7742 (Facsimile)

P. Stephen Fardy
William D. Patterson
sfardy@smbtrials.com
wpatterson@smbtrials.com
**SWANSON, MARTIN & BELL, LLP**
330 N. Wabash, Suite 3300
Chicago, IL 60611
(312) 321-9100 (Telephone)
(312) 321-0990 (Facsimile)

_Attorneys for Defendant Urschel Laboratories, Inc._

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of October 2020, a true and correct copy of the

foregoing pleading or paper was served using the Court's CM/ECF system, with electronic

notification of such filing to all counsel of record.

*/s/ Megan S. Woodworth*

Megan S. Woodworth

Urschel-FAM@venable.com

**VENABLE LLP**

600 Massachusetts Ave, NW

Washington, DC 20001

(202) 344-4000 (Telephone)

(202) 244-7742 (Facsimile)
